```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
REZA JALILI,                            :
                   Plaintiff,           :
                                        :       11 Civ. 1200 (DLC)
          -v-                           :
                                        :       OPINION & ORDER
XANBOO INC., AT&T TELEHOLDINGS, INC.,   :
and ROBERT L. DIAMOND,                  :
                   Defendants.          :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
David K. Bowles
Bowles, Cohn & Crow L.L.P.
54 West 21st Street, Suite 1007
New York, NY 10010

For Defendant AT&T Teleholdings, Inc.:
Jonathan B. Nelson
The Dorf Law Firm, LLP
740 West Boston Post Road, Suite 304
Mamaroneck, NY 10543

For Defendants Xanboo Inc. and Robert L. Diamond:
Dianna L. Daghir McCarthy
Robyn Leigh Silvermintz
Winget, Spadafora & Schwartzberg, LLP
45 Broadway, 19th Floor
New York, NY 10006

DENISE COTE, District Judge:

     Plaintiff Reza Jalili ("Jalili"), a software developer, brings this action for breach of his employment contract against his former employer Xanboo Inc. ("Xanboo"), Xanboo's founder and chairman Robert L. Diamond ("Diamond"), and Xanboo's parent company AT&T Teleholdings, Inc. ("AT&T").  AT&T has moved to

dismiss the claims for breach of contract and successor liability against it.  For the following reasons, the motion is granted.

## BACKGROUND

Jalili's complaint asserts six causes of action against Xanboo:  two claims for breach of contract and one claim each of fraudulent inducement, actual fraud, constructive fraud, and promissory estoppel.  Jalili asserts one claim for actual fraud against Diamond.  Finally, Jalili asserts claims for breach of contract and successor liability against AT&T.  Jalili primarily contends that Xanboo and AT&T have breached his employment contract by failing to pay him 1% of the company's stock that became due upon the sale of Xanboo to AT&T.

The following facts are taken from the complaint.  On June 26, 1998, Core Technologies, Inc. ("Core"), a software company, was incorporated in New York.  Plaintiff Jalili, a resident of Utah, was recruited by Core in August of 1999 to develop the company's security software.  By letter of August 2, 1999 (the "Cover Letter"), Jalili was offered a position in the engineering department of Core by Diamond, Core's founder and president.  The Cover Letter stated that Jalili's annual salary would be $90,000.  It further stated that

> Upon your acceptance of employment and commencement of work at Core, you will be awarded equity equivalent to 1% of the company's stock.  You will receive an additional 1% of the company's stock at the occurrence of either of the following two events:
> - Core Technology becomes a public company
> - Core Technology is sold to another entity
>
> Your total equity potential at this time, therefore, is 2% of the stock of Core Technology Inc.

The Cover Letter noted that "[a] copy of the current stockholder's agreement, which you would sign as a stockholder, is attached."  The stockholder's agreement was not attached as an exhibit to Jalili's complaint.

Attached to the Cover Letter was a document dated August 2, 1999 and titled "Employment Agreement."  The Employment Agreement stated that "[t]he Company agrees, or has agreed, to employ you commencing on August 2, 1999 for the annual salary of $90,000, plus other consideration as may be mutually agreed upon from time to time."  The Employment Agreement contained an integration clause which provided that the Employment Agreement "represents the entire Agreement between us and supersedes any prior Agreement or understanding with respect to the subject matter."  Jalili signed the employment agreement on August 2, 1999.

Jalili alleges that he contributed substantially to Core's success and that the company was valued at $100 million immediately prior to his departure.  Jalili alleges that at a meeting with Core's lawyers in September of 1999, he was

3

fraudulently induced to relinquish his 1% ownership stake in Core.  According to Jalili, Core's lawyers represented to him that it would be difficult for Core to go public or to sell to another company if Jalili maintained his 1% ownership stake.

Jalili entered into a stock option agreement with Core on October 1, 1999.  On January 31, 2000, Jalili resigned his position at Core.  Core changed its name to Xanboo on September 27, 2000.

AT&T and Xanboo entered into an "Agreement and Plan of Exchange" on November 2, 2010 whereby AT&T purchased all of Xanboo's stock (hereinafter the "Sale Agreement").  By the terms of the Sale Agreement, Xanboo was to become a "wholly-owned subsidiary" of AT&T.  Jalili alleges that in March of 2011, AT&T wrote to "all of the retailers with contracts to sell Xanboo products and unilaterally cancelled all such contracts."  The form letter sent by AT&T stated that "AT&T is currently in the process of integrating Xanboo into AT&T's portfolio of services and affiliated companies" and was signed by in-house counsel for AT&T.

Jalili does not allege that he ever received a letter from AT&T purporting to alter the terms of his employment contract with Xanboo.  He states, however, that "AT&T is in the process of integrating Xanboo's assets into AT&T, leading to an actual or de facto merger of Xanboo into AT&T."  Jalili further alleges

4

that "AT&T has assumed complete control over Xanboo to the point that Xanboo has no separate will of its own."

Jalili filed his original complaint on February 22, 2011. AT&T, Xanboo, and Diamond moved to dismiss the original complaint on June 13. Jalili amended his complaint on July 14. The amended complaint seeks damages of $550,000 for the defendants' alleged breach of Jalili's Employment Agreement. Jalili asserts that $550,000 is equivalent to 1% of the equity of Xanboo at the time of its sale to AT&T. The amended complaint further seeks damages of $1.1 million for the defendants' fraudulent inducement of Jalili to relinquish his 1% ownership stake.

AT&T moved to dismiss the amended complaint on August 12. The motion was fully submitted on September 2.

DISCUSSION

AT&T primarily argues that Jalili has failed to plead facts sufficient to form a basis for piercing the corporate veil of Xanboo in order to assert a claim for breach of contract against AT&T. AT&T contends that Jalili's allegations do not provide a basis for inferring that Xanboo has no separate existence of its own, as required to pierce the corporate veil. In addition, AT&T argues that Jalili has failed to plead fraud with sufficient particularity. Because Jalili has not adequately

plead a basis for piercing the corporate veil or for successor liability, it is not necessary to address AT&T's arguments with respect to the fraud claims.

On a motion to dismiss the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  The court is "not bound to accept as true legal conclusions couched as factual allegations.  Only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009)).

I.  Piercing the Corporate Veil

The parties do not argue that the law of a state other than New York should apply here, and the Second Circuit has held that "where the parties agree that New York law controls, this is sufficient to establish choice of law."  Federal Ins. Co. v. American Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011). Under New York law,

> [i]n some instances, the corporate relationship between a parent and its subsidiary is sufficiently close to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other.  As a general matter, however, a corporate relationship alone is not sufficient to bind a parent corporation for the actions of its

> subsidiary.  Indeed, ownership by a parent of all of its subsidiary's stock has been held an insufficient reason in and of itself to disregard distinct corporate entities.  Actual domination, rather than the opportunity to exercise control, must be shown.
>      To overcome the presumption of separateness afforded to related corporations, Plaintiffs must come forward with the showing of actual domination required to pierce the corporate veil.

De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 69-70 (2d Cir. 1995) (citation omitted) (addressing pleading requirement on motion to dismiss).  In assessing "actual domination,"

> courts look to a variety of factors, including the intermingling of corporate and shareholder funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors.

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 18 (2d Cir. 1996).  Where the complaint relies on conclusory assertions devoid of facts from which it may be inferred both that a parent dominated the subsidiary's business and that the parent acted to defraud the plaintiff, the claim against the parent plead through the mechanism of piercing the corporate veil must be dismissed.  De Jesus, 87 F.3d at 70.

     Jalili has failed to plead facts sufficient to overcome the presumption of separateness of a corporation.  The conclusory assertion that AT&T exercises "dominion and control" over Xanboo

7

and that Xanboo "has no separate will of its own" does not support an inference that would justify disregard of the corporate form.  The only fact that Xanboo has alleged that would suggest that Xanboo's separate identity should be disregarded is the letter from AT&T's counsel cancelling Xanboo's contracts.  But while this suggests that AT&T may have some control over Xanboo's business affairs, it does not rise to the level of the factors cited above, such as failure to pay dividends, inactivity of directors, and the like.  Similarly, there is no fact pleaded from which it can be inferred that AT&T used its domination of Xanboo to defraud Jalili.  Accordingly, Jalili's claim for breach of contract against AT&T is dismissed.

II.  Successor liability

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities."  N.Y. v. Bat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). Successor liability attaches only where:  "(1) [the successor] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations."  Id.

Jalili appears to allege that the second exception for de factor merger applies here.  To determine whether there has been a de facto merger, the Court considers whether there was:

> (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation.

Id.  Though the Court examines all of the foregoing factors, "continuity of ownership is the essence of a merger," id. at 211 (citation omitted), and therefore the exception cannot apply in its absence.  Id.; see also Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 46 (2d Cir. 2003) (discussing necessity of providing sufficient factual basis to plead continuity of ownership on motion to dismiss).

Jalili fails to allege facts sufficient to give rise to an inference of "continuity of ownership" between Xanboo and AT&T.  In fact, it appears from the complaint that Xanboo has survived the sale of its stock to AT&T as a distinct entity.  Jalili simply alleges that "AT&T is in the process of integrating Xanboo's assets into AT&T, leading to an actual or de facto merger of Xanboo into AT&T."  The integration of Xanboo's assets into those of AT&T does not necessarily suggest that a de facto merger of the two corporations has taken place, however.

9

Accordingly, Jalili's claim for successor liability against AT&T is dismissed.

## CONCLUSION

AT&T's August 12, 2011 motion to dismiss the claims for breach of contract and successor liability against it is granted.

SO ORDERED:

Dated:   New York, New York
         September 15, 2011

                                              _____
                                                           DENISE COTE
                                       United States District Judge